UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENZER BELL,

               Plaintiff,

-against-

DANIEL H. PLANTE a/k/a DANIEL PLANTE;
LORIANN A. PLANTE; LINSEY TAYLOR
PLANTE; DAN'S DEATAILING OF
MELBOURNE, LLC; "ABC"
CORPORATIONS 1-55" being unknown, and
fictitious at this time,

               Defendants.

1:22-CV-5232 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Renzer Bell, who is appearing *pro se*, filed this action under the Court's federal question and supplemental jurisdiction, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 42 U.S.C. § 1981, and the Defend Trade Secrets Act ("DTSA"), as well as claims under state law.[1] He sues: (1) Daniel H. Plante ("Daniel"), of Melbourne, Florida; (2) Loriann A. Plante ("Loriann"), Daniel's wife, of Melbourne, Florida; (3) Lindsey Taylor Plante ("Lindsey"), Daniel's daughter, of Melbourne, Florida; (4) Dan's Detailing of Melbourne, LLC, Daniel's business, of Melbourne, Florida; and (5) "'ABC Corporations 1-55' being unknown, and fictitious at this time." Plaintiff seeks damages totaling $906,120.

---

[1] Under Rule 5.2(a)(4) of the Federal Rules of Civil Procedure, a court submission may only refer to a financial-account number by listing the last four digits of that number. In his complaint, Plaintiff reveals the complete bank-account number of another entity. In light of this, and in an abundance of caution, the Court has directed the Clerk of Court to restrict CM/ECF access to the complaint to a "case participant-only basis."

By order dated July 7, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons discussed below, the Court dismisses Plaintiff's claims under federal law, but grants Plaintiff 30 days' leave to file an amended complaint to replead those claims.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). ). The Court may further dismiss untimely *pro se* claims *sua sponte*, so long as the Court grants the *pro se* litigant notice and an opportunity to be heard. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

### A.  Plaintiff's allegations

Plaintiff alleges the following: Plaintiff is African-American. In or about May 2016, after Plaintiff had advertised his right to purchase a rare 2016 Ford Mustang Shelby GT350R ("2016 Mustang Shelby") vehicle[2] on eBay, he entered into a contract with Daniel to sell Daniel that right for $3,088 and other consideration.[3] Daniel agreed to hold the $3,088 until he received a purchase agreement from Plaintiff or the car dealer, and within 48 hours of receipt of that purchase agreement, to pay Plaintiff the $3,088, any difference in the negotiated price for the 2016 Mustang Shelby above the manufacturer's suggested retail price ("MSRP") plus $19,000, and any relevant taxes and fees. Daniel also agreed to reimburse Plaintiff for whatever amount he paid to the car dealer to secure the purchase of the 2016 Mustang Shelby within 72 hours of

---

[2] Plaintiff alleges that "enthusiasts [have] paid as much as $175,000.00 [for a 2016 Mustang Shelby,] which roughly equates to $110,000.00 above its" manufacturer's suggested retail price. (ECF 1, at 4.)

[3] Plaintiff has attached to the complaint a copy of the contract at issue. (ECF 1-6, at 4-5.) The contract contains a forum-selection clause in which Plaintiff and Daniel allegedly agreed that "all legal proceedings . . . relating to . . . this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and [that Daniel] consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively in such courts." (ECF 1-6, at 5.)

signing the contract. Daniel further agreed to pay the car dealer the MSRP plus $19,000, as well as taxes and fees, within two days of the date that the car dealer notified Plaintiff that the 2016 Mustang Shelby was ready to be picked up or delivered. In addition, Plaintiff and Daniel agreed that within 30 days of providing Daniel with the purchase agreement for the 2016 Mustang Shelby, Plaintiff could provide Daniel with a purchase agreement for a second vehicle – a 2017 Ford Mustang Shelby GT350R vehicle ("2017 Mustang Shelby") – and that the purchase of the second vehicle by Daniel would take place in the same manner as the purchase of the first vehicle, without the need for another contract. Plaintiff and Daniel agreed that Daniel would not communicate with the car dealer under any circumstances without Plaintiff's written consent, and that the contents of the contract were confidential and that Daniel would not reveal them to anyone without Plaintiff's written consent. In addition, Plaintiff and Daniel agreed that if Daniel did not comply with those contractual provisions, he would pay Plaintiff $99,980 "as partial liquidated damages." (ECF 1-6, at 4.) On or about May 12, 2016, Plaintiff received, via fax machine, the contract signed by Daniel and sent by Lindsey.

On or about that same date, Performance Ford-Lincoln, of Charlotte, North Carolina (the "car dealer"), sent a purchase agreement for the 2016 Mustang Shelby to Plaintiff. Two days later, on or about May 14, 2016, Plaintiff sent the purchase agreement, by fax machine, to Daniel. Two days after that, on or about May 16, 2016, Plaintiff telephoned Daniel and told him that he had faxed the purchase agreement to him and reminded Daniel of his contractual obligations.

On or about a day later, Plaintiff asked a business associate, Michael Pinney, a Florida car dealer, to telephone Daniel and tell him that the 2016 Mustang Shelby was available for purchase from Pinney's dealership. Daniel told Pinney that he had found an available 2016 Mustang

Shelby located at a Ford dealership in Ohio, it was selling for the MSRP plus $10,000 less than he had agreed to pay in his contract with Plaintiff, and that "'he got confused then scared.'" (ECF 1, at 10.) After making several telephone calls to Daniel, on or about May 18, 2016, Plaintiff sent a letter to Daniel, via the United States Postal Service ("USPS"), seeking performance of Daniel's obligations under the contract; the defendants refused to accept delivery of the letter at Daniel's residence. On or about that same date, Plaintiff sent another letter to Daniel, via the USPS, informing Daniel that he was exercising his option under the contract of selling Daniel the right to purchase a second vehicle – a 2017 Mustang Shelby; the defendants also refused delivery of that letter at Daniel's residence.

To preserve Daniel's right to purchase the 2016 Mustang Shelby or, if Daniel was unwilling or unable to perform his contractual obligations, to cover the purchase of that vehicle, Plaintiff wired the full amount to secure the vehicle to the car dealer.

In or about June 2016, without Plaintiff's consent, Daniel informed the car dealer about his contract with Plaintiff. During his conversations with the car dealer's employees, Daniel "committed commercial disparagement[] and slander . . . making unfounded, and willfully malicious comments" about Plaintiff. (*Id.* at 9.) Daniel then gave the car dealer a deposit to purchase the 2016 Mustang Shelby, "hoping that the disparaging[] and slanderous allegations[] and comments made about [Plaintiff] would result in [the car dealer] refusing to do business with [Plaintiff]," and allowing Daniel to purchase both the 2016 Mustang Shelby and the 2017 Mustang Shelby without paying Plaintiff, as required under the contract. (*Id.*)

In 2019, Plaintiff spoke to Daniel and Loriann. They "provided an incoherent message with [Loriann] requesting a statement of account identifying the amount due to" Plaintiff, and

Daniel "requesting documents evincing that [] Plaintiff had the contractual rights to purchase a" 2016 Mustang Shelby. (ECF 1, at 21.)

Plaintiff also alleges the following: Daniel did not comply with his contractual obligations, and because of Daniel's slanderous comments, Plaintiff has been unable to find a substitute buyer to purchase the 2016 Mustang Shelby. Daniel ultimately bought a 2016 Mustang Shelby directly from the car dealer. Plaintiff asserts that Daniel, in a racketeering scheme, knowingly entered into the contract to defraud Plaintiff, conspired with the other defendants to defraud Plaintiff, and did so to learn Plaintiff's trade secrets (the identities of car dealers selling rare vehicles).

## B. Plaintiff's litigation history

On June 12, 2020, Plaintiff filed a *pro se* action in this court against Daniel, Loriann, Lindsey, "Dan's Detailing," and "'ABC Corporations 1-21' being unknown and fictitious at this time," asserting claims arising from the same facts alleged in the present action. *Bell v. Plante* ("*Bell I*"), ECF 1:20-CV-4598, 2 (complaint). In an affidavit attached to a declaration in support of a motion to dismiss *Bell I*, which was filed on November 13, 2020, Daniel asserted that he did not sign the contract and that his signature on the contract is a forgery.[4] *Bell I*, ECF 1:20-CV-4598, 23-1, at 2. On May 18, 2021, Plaintiff filed a notice of voluntary dismissal without prejudice. *Bell I*, ECF 1:20-CV-4598, 43. In an endorsement issued one day later, on May 19,

---

[4] In other affidavits attached to that declaration, Loriann and Lindsey stated that they never received, reviewed, or signed the contract, or ever communicated with Plaintiff regarding the sale of the vehicles. *Bell I*, ECF 1:20-CV-4598, 23-2, 23-3.

2021, Judge John G. Koeltl of this court dismissed *Bell I* without prejudice.[5] *Bell I*, ECF 1:20-CV-4598, 44.

## DISCUSSION

Plaintiff's claims under 42 U.S.C. § 1981, the DTSA, and his civil claims under RICO appear to be untimely. There is, at most, a four-year limitations period for claims under Section 1981. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004); *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at *11 (S.D.N.Y. Sept. 28, 2018). As to claims under the DTSA, such claims may not be brought "later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of [these claims], a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d). In addition, there is a four-year limitations period for civil claims under RICO. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

Claims under Section 1981 generally accrue when the plaintiff knows or has reason to know of the injury that is the basis of the claim. *E.g., Andrews v. Freemantlemedia, N.A., Inc.*, 613 F. App'x 67, 68 (2d Cir. 2015) (summary order). As to claims under the DTSA, they "accrue from the date the misappropriation 'is discovered or by the exercise of reasonable diligence should have been discovered.'" *Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020) (quoting Section 1836(d)) (summary order), *cert. denied*, 142 S. Ct. 311 (2021). Likewise, the limitations period for civil claims under RICO "begins to run when the plaintiff discovers or should have

---

[5] In the present complaint, Plaintiff alleges that on or about October 13, 2020, when he was served with the motion to dismiss in *Bell I*, he "began to suspect that the subject contract might contain the signature of someone other than" Daniel. (ECF 1, at 3.)

discovered the RICO injury." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (internal quotation marks and citations omitted).

A limitations period for a claim under federal law may be equitably tolled if a plaintiff shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (internal quotation marks and citation omitted) A defendant's fraudulent concealment may equitably toll the applicable limitations period if the plaintiff shows that: "(1) [] defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999) (citation omitted).

Because the failure to file an action within the relevant limitations period is the basis for an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), a plaintiff is generally not required to plead that his claims are timely filed, *see Abbas*, 480 F.3d at 640. *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as untimeliness, is plain from the face of the complaint. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011).

Plaintiff's claims under federal law appear to have accrued in or about May or June 2016, when Plaintiff made numerous telephone calls and sent letters to Daniel, reminding him about his contractual obligations, and when Daniel spoke to the car dealer about the contract without Plaintiff's consent. Thus, the longest limitations periods appear to have expired four years later, in or about May or June 2020. Plaintiff did not file the present complaint in this court until June 21, 2022, approximately two years after the longest limitations periods expired, and he has not

alleged any facts showing that the applicable limitations periods should be equitably tolled. The Court therefore dismisses Plaintiff's claims under federal law for failure to state a claim on which relief may be granted because they are untimely. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to file an amended complaint in which he repleads his claims under federal law to allege facts showing that those claims are timely or that the applicable limitations periods should be equitably tolled. *See Abbas*, 480 F.3d at 640.

## CONCLUSION

The Court dismisses Plaintiff's claims under federal law for failure to state a claim on which relief may be granted because they are untimely. 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 30 days' leave to file an amended complaint in which he repleads his claims under federal law to allege facts showing that those claims are timely or that the applicable limitations periods should be equitably tolled. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment dismissing this action; the Court will dismiss Plaintiff's claims under federal law for failure to state a claim on which relief may be granted, *see id.*, and the Court will decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).[6]

---

[6] If Plaintiff wishes to assert, in his amended complaint, his claims under state law under the Court's original diversity jurisdiction, he must allege facts showing that he and the defendants are citizens of different states, and that the amount in controversy is in excess of the sum or value of $75,000. *See* 28 U.S.C. § 1332(a)(1). The Court notes that a limited liability company (LLC) takes the state citizenships of each of its members. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: August 1, 2022
       New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge